IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RBS CITIZENS, N.A., | ) | CASE NO. 1:07 CV 3634 |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| ERIE INSURANCE EXCHANGE, et al., | ) | |
| Defendants. | ) | Magistrate Judge McHargh |

On November 26, 2007, Plaintiff RBS Citizens, N.A. ("RBS") filed a Complaint against several Defendants, including Defendant Susan Tackett ("Tackett"), alleging that it is entitled various funds related to property known as the Millstone Condominium Development (the "Development"). Specifically, RBS claims that it is entitled to the proceeds of a flood insurance policy issued by FEMA to Tackett, any proceeds from the pending partition and sale of the Development to which Tackett would be entitled based on her undivided interest in the Development's common property, and to any insurance proceeds related to the damage of the common areas and facilities of the Development.

RBS filed a Motion for Partial Summary Judgment against Tackett on November 14, 2008. ([Doc. 36](#)). Tackett's opposition was due December 14, 2008. As of the date of this Memorandum and Order, however, Tackett has not responded to RBS' motion. For the reasons set forth below, RBS' Motion for Partial Summary Judgment is GRANTED.

**I. UNDISPUTED FACTS**

This case arises out of the flooding and subsequent total destruction of a condominium development. RBS is the successor by merger to CCO Mortgage Corporation ("CCO") and Charter One Bank. (Doc. 38, Plaintiff's Exhibit ["PX"] A; PX A-1). Tackett is the owner of real property located at 16 Millstone Drive, Painesville, Ohio 44077 — a part of the Development. (Doc. 38, PX B; PX B-3; PX B-4; doc. 11, at ¶ 3). Tackett's ownership interest in the Development includes not only her individual condominium unit but also a two and 12/19ths percent undivided interest in the common areas and facilities of the Development (collectively, the "Tackett Property"). (Doc. 11, at ¶; doc. 38, PX B, at 7, 8, and 16; PX B-1, at Section VI.A.).

On December 20, 2005, CCO provided a mortgage loan to Tackett to help her purchase the Tackett Property. (Doc. 38; PX B, at 18-21; PX B-4). CCO's mortgage interest was secured by the Tackett Property. (Id.). Under the terms of the mortgage agreement (the "Mortgage"), Tackett was required to obtain flood insurance. (Doc. 38; PX B, at 29-34; PX B-4, at 5). Tackett secured the required flood insurance by obtaining a policy though the National Flood Insurance Program (the "Tackett Policy"). (Doc. 38, PX B, at 34-35, 51-52; PX B-8; PX B-16; PX B-17).

The Mortgage states that any insurance proceeds Tackett received related to damage or destruction of the Tackett Property would be applied to her unpaid mortgage balance. (Doc. 38, PX B-4, at 5). The relevant portions of the mortgage agreement provide:

> **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to earthquakes and floods for which Lender requires insurance.
>
> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender . . . . Unless Lender and Borrower otherwise agree in writing, any insurance

proceeds, whether or not the underlying insurance was required by Lender, shall be applied to the restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened . . . . **If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due**, with the excess, if any paid to Borrower.

(Id.). (Emphasis added).

Tackett admitted in her Answer that CCO is a named additional insured and intended third party beneficiary under the Tackett Policy (Doc. 11, at ¶ 3). She further acknowledged that CCO was a listed mortgagee on the Tackett Policy at the time of the loss. (Doc. 38, PX B, at 50-51; PX B-17).

The Mortgage also provides that any Miscellaneous Proceeds payable as a result of a loss or destruction of the Tackett Property shall be applied to the unpaid balance of the mortgage loan. (Doc. 38, PX B-4, at 9-10). "Miscellaneous Proceeds" are defined in the Mortgage as "any compensation, settlement, award of damages or proceeds paid by a third party (other than insurance proceeds paid under the coverage described in Section 5) for (i) damages to, or destruction of, the [Tackett] Property . . . ." (Id. at 1-2). The Mortgage also assigns any Miscellaneous proceeds to CCO as Lender. (Id. at 9-10). Section 11 of the Mortgage reads in relevant part:

> All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender. . . . If restoration is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower . . . .
>
> **In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by the Security Instrument, whether or not then due**, with the excess, if any, paid to Borrower.

(Id.) (emphasis added).

The Association for the Development also obtained a flood insurance policy for the common

3

areas and facilities of the Development (the "Association Policy"). (Doc. 38, PX B, at 25-26; PX C, at 27-29; PX C-24; PX C-25). CCO was a listed mortgagee on and third party beneficiary of the Association Policy. (Doc. 38, PX C, at 29; PX C-24).

The Association Policy and the Tackett Policy each contains a Mortgagee Clause, which states in relevant part:

> Any loss payable under Coverage A – Building Property will be paid to any mortgagee or whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss payee determined to exist at the time of loss, and you, as interests appear.
>
> *****
>
> All of the terms of this policy apply to the mortgagee.
>
> The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action of the building.

(Doc. 38, PX B, at 14; PX C-26, at 14-15).

In her deposition, Tackett acknowledged that CCO is entitled to the proceeds of the Tackett Policy. (Doc. 38, PX B, at 54-57). The relevant portion of Tackett's deposition was as follows:

> Q. Is it your understanding that in the first sentence of that paragraph Q [on page 14 of the Tackett Policy] that you are agreeing that the amount [of the building coverage] will be paid to the mortgagee of whom FEMA has notice at the time of loss?
>
> A. That's my understanding.
>
> Q. So under this policy you're agreeing that in this case CCO Mortgage Corp.or its successors would have the right to receive the proceeds from that insurance policy from FEMA that provided flood insurance.
>
> A. Yes.
>
> *****

> **Q.** **So it's your understanding that Charter One Bank, which is RBS Citizens, N.A., is entitled to the insurance proceeds that you received under the Building A coverage of your flood insurance policy from FEMA.**
>
> **A.** **That's my understanding, yes.**

(Doc. 38, PX B, at 54-55) (emphasis added).

Tackett also acknowledged in her deposition that CCO would be entitled to any other proceeds related to the subject flood losses that she received from any third parties, including any proceeds she is entitled to receive under the Association Policy. (Doc. 38, PX B, at 61-62). The relevant portion of Tackett's deposition was as follows:

> Q. So at the time [that] you obtained your mortgage loan from Charter One Bank, it was your understanding and you agreed that any proceeds that would be payable otherwise to you under the association's flood insurance policies should be paid to Charter One Bank and applied to pay down your mortgage. Is that your understanding?
>
> A. That was how I perceived it.
>
> Q. That was what you agreed to?
>
> A. Yes.
>
> \*\*\*\*\*
>
> **Q.** **To the extent that you may have some right to receive proceeds from the Association Policy or from some third party related to the loss that are not otherwise covered by your insurance policy, are you in agreement that those proceeds should be paid over to Charter One until your note and mortgage are satisfied?**
>
> **A.** **I believe so, yes.**

(Id.) (emphasis added).

On July 26, 2006, the Development was damaged by a flood, which resulted in a total loss

5

of the common areas and facilities of the Development and the Tackett Property. (Doc. 38, PX B, at 8). After evaluating the extent of the flood damage, the Association passed a resolution electing not to rebuild or restore any of the residential structures within the Development on the grounds that it was not economically feasible to do so. (Doc. 38, PX B, at 66-67; PX B-40, at 1-2).

After the flood loss, FEMA issued directly to Tackett proceeds in the amount of $50,887.88 pursuant to the Tackett Policy; it also issued directly to the Association proceeds in the amount of $59,352 pursuant to the Associated Policy. (Doc. 38, PX B-18; PX C-36). The latter proceeds subsequently were deposited into the Court Registry pursuant to the Agreed Order. (Doc. 34, 35). The amount of principal, interest and other charges currently due on the Mortgage is $97,249.03. (Doc. 38, PX A; PX A-2).

RBS now requests that the Court enter summary judgment in its favor and declare RBS' right to receive Tackett's interest in the proceeds related to the subject flood loss.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the burden of showing the absence of any such genuine issues of material facts. *Celotex*, 477 U.S. at 323. A fact is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 248. All facts and inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

6

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party pursuant to Federal Rule of Civil Procedure 56(e), which states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party*.

(Emphasis added).

A fairly unusual situation presents itself where the nonmoving party does not respond to the motion for summary judgment. While the Court generally is free to sustain unopposed motions, this empowerment does not extend to motions for summary judgment. *Rance v. Datavantage, Corp.*, 2008 WL 1899986, at *3 (N.D. Ohio April 28, 2008). The "district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991); *see also Sutton v. United States*, 1991 WL 590, at *2, n. 1 (6th Cir. 1991) ("Rule 56 requires a court, even where a motion for summary judgment is unopposed, to determine that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment.").

This does not mean, however, that "where the nonmoving party fails to respond to the motion for summary judgment, the trial court [must] search the entire record to establish that it is bereft of a genuine issue of material fact." *In re St. Clair Clinic, Inc.*, 1996 WL 6531, at *2 (6th Cir.

1996). Rather, the Court "should rely upon the facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

### III. LAW AND ARGUMENT

#### 1. Contract Claim

RBS's first argument on motion for partial summary judgment is that RBS is contractually entitled to any proceeds Tackett receives based on the terms of the Tackett Policy, the Mortgage, and the Association Policy.

"'The purpose of contract construction is to effectuate the intent of the parties,' and that intent 'is presumed to reside in the language they chose to employ in the agreement.'" *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St.3d 559, 564, 820 N.E.2d 910 (Ohio 2004) (quoting *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (Ohio 1987). When the contract is clear and unambiguous, the trial court must enforce the contract as written. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). These rules apply to mortgage contracts. "Mortgages, being voluntary security agreements incident or collateral to a primary obligation, are susceptible to the same rules of interpretation and the same framework of analysis which apply to contracts generally." *First Fed. Sav. & Loan Assn. Of toledo v. Perry's Landing, Inc.*, 11 Ohio App.3d 135, 143, 463 N.E.2d 636 (Ohio App. 1983). These rules also apply generally to insurance contracts. "When the 'terms of an insurance policy are clear and unambiguous,' Ohio law requires a court to 'appl[y] [the terms] to the facts without engaging in any construction.'" *Toledo-Lucas County Port Auth. v. Axa Marine & Aviation Ins.*, 368 F.3d 524 (6th Cir. 2004) (quoting *Ledyard v. Auto-Owners Mut. Ins. Co.*, 137 Ohio App.3d 501, 739 N.E.2d 1 (Ohio App. 2000).

RBS presents several sub-arguments and pieces of affirmative evidence establishing that RBS

8

is contractually entitled to any proceeds Tackett receives. First, RBS points to the language of the Mortgage itself. Under the property insurance provision of the Mortgage, Tackett as Borrower was required to "keep the improvements . . . on the Property insured against . . . any other hazards, including earthquakes and floods." (Doc. 38, PX B-4, at 5). In the event of an insured loss after which "restoration or repair is not economically feasible[, the Mortgage provides that] the insurance proceeds shall be applied to the sums secured by [the Mortgage], whether or not then due, with the excess, if any paid to Borrower." (Id.). The Mortgage further requires that any Miscellaneous Proceeds, such as any compensation, settlement, award of damages or proceeds that any third party pays for damage to or destruction of the Property "be applied to the sums secured by [the mortgage], whether or not then due," if restoration is not economically feasible. (Id. at 9-10). The Mortgage also assigns to CCO any rights Tackett may have in any miscellaneous proceeds. (Id.). Specifically, it states that "[a]ll Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender." (Id.).

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff*, 524 F.3d at 763. The language quoted above is not unclear or ambiguous: the terms of the Mortgage clearly provide that RBS is entitled to any proceeds Tackett receives from her insurer or any third party source for damages to the Tackett Property. Furthermore, it is undisputed that the property will not be restored or repaired. The Development's Association has declared and passed a resolution to the effect that it will not rebuild the Development because it is economically infeasible to do so. (Doc. 38, PX B, at 66-67; PX B-40, at 1-2). Thus, the Mortgage clearly establishes RBS' right to recovery.

Second, RBS points to Tackett's deposition testimony to show that there is no dispute as to

9

Tackett's agreement to pay to RBS any proceeds she receives.  Tackett expressly acknowledged during the course of her deposition that, pursuant to the terms of the Mortgage, RBS is entitled to the proceeds of the Tackett Policy.  (Doc. 38, PX B, at 54-57). Tackett also acknowledged in her deposition that RBS is entitled to any proceeds from third parties that may be payable as a result of the subject flood losses.  (Doc. 38, PX B, at 61-62).

Third, RBS points to the language of the mortgagee clauses of the Tackett Policy and the Association Policy, which expressly set forth RBS' right to the proceeds of those policies.  Both policies specifically provide that "any [building property] loss payable . . . will be paid to any mortgagee or whom [the insurers] have actual notice at the time of loss."  (Doc. 38, PX B-17, at 14; PX C-26, at 14-15).  Here again, the quoted language is neither unclear nor unambiguous.  The Declaration Pages of the Tackett Policy and Association Policy specifically list RBS as the first mortgagee (Doc. 38, PX B-17; PX C, at 29; PX C-24), and Tackett admitted — in both her Answer and deposition — that RBS' predecessor was a listed mortgagee, an additional insured, and a third party beneficiary of the policies.  (Doc. 11, at ¶ 3; doc 38, PX B-4, at 50-51).  Thus, the insurance contracts also clearly establish RBS' right to recovery.

The Court finds, based on the above, that RBS has discharged its initial burden to show that: (1) there is no genuine issue of material fact that Tackett agreed to apply any proceeds related to the destruction of the Tackett Property she receives to the unpaid mortgage balance; and (2) therefore, RBS is entitled to those proceeds as a matter of law.  Tackett has failed to respond to RBS' motion for partial summary judgment, so the Court must rely on the facts as presented and designated by the moving party.  See *Guarino,* 980 F.2d at 404.  Under these circumstances, the Court finds that it is appropriate to enter judgment in favor of RBS on its contract claim.

## 2. Statutory Claim

RBS' second argument on motion for partial summary judgment is based on Ohio Revised Code § 5311.14. Specifically, RBS claims that the statute entitles it to any insurance proceeds or other indemnity related to the common areas and facilities of the Development and any portion of the proceeds from its sale to which Tackett would otherwise be entitled based on her undivided interest.

> The relevant portions of O.R.C. § 5311.14 provide:
>
> (B)(1) Unless provided otherwise in the declaration, in the event of damage to or destruction of all or any part of the common elements of a condominium property, the unit owners, by the affirmative vote of those entitled to exercise not less than seventy-five per cent of the voting power or a greater per cent if provided in the declaration, may elect not to repair or restore the damaged or destroyed common elements.
>
> (2) Upon an election not to repair or restore, all of the condominium property is subject to an action for sale as upon partition at the suit of unit owners exercising a majority of the coting power of unit owners. If the condominium property is sold pursuant to division (B)(2) of this section, any net proceeds of the sale, the net proceeds of insurance, and any other indemnity arising because of the damage or destruction are considered as one fund for distribution to all unit owners in proportion to the undivided interests in the common elements appurtenant to their units.
>
> **No unit owner is entitled to receive any portion of those proceeds until all liens and encumbrances on the unit, except taxes and assessments of political subdivisions not then due and payable, are paid, released, or discharged.**

(Emphasis added).

It is undisputed that the common areas and facilities of the Development in this case incurred a total loss. After the destruction of the Development, the Association passed a resolution electing not to repair or restore the property on the grounds that it was not economically feasible to do so. (Doc. 38, PX B, at 66-67; PX B-40, at 1-2). The Association thereafter filed a partition action in the

11

Geauga County Court of Common Pleas in order to effectuate the sale of the common areas and common property of the Development.  (Doc. 38, PX D).

Under O.R.C. § 5311.14, a unit owner is not entitled to receive any "net proceeds of the sale, the net proceeds of insurance, [or] any other indemnity arising because of the damage or destruction" of the common elements of a condominium development until all liens are satisfied.  The language of the statute is unambiguous, and it is undisputed that RBS currently holds a mortgage lien on Tackett's undivided interest in the common areas and facilities of the Development.  Tackett does not dispute either the fact or the amount of RBS' mortgage lien on the Tackett Property.  Therefore, the Court finds it appropriate to enter judgment in favor of RBS on its statutory claim.  Specifically, the Court finds that RBS is entitled receive Tackett's portion of the net proceeds from sale of the common areas of the Development and any net proceeds from the Association Policy or other indemnity arising from the damage to the common areas to which Tackett would otherwise be entitled — until its lien has been fully discharged.

For the foregoing reasons, the Court finds that RBS has: (1) contractual rights to any proceeds Tackett receives based on the terms of the Tackett Policy, the Mortgage, and the Association Policy; and (2) statutory rights under O.R.C. § 5311.14 to any sale or insurance proceeds to which Tackett would otherwise be entitled based on her undivided interest in the common areas and facilities of the Development.  Accordingly, RBS' motion for partial summary judgment against Tackett is GRANTED.

IT IS SO ORDERED.

                    s/ Kenneth S. McHargh  
                    Kenneth S. McHargh  
                    United States Magistrate Judge

Date: January 30, 2009.