IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RBS CITIZENS, N.A., | ) | CASE NO. 1:07 CV 3634 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| ERIE INSURANCE EXCHANGE, et al., | ) | |
| | ) | |
| Defendants. | ) | Magistrate Judge McHargh |
| | ) | |
| | ) | |

On November 26, 2007, Plaintiff RBS Citizens, N.A. ("RBS") filed a Complaint against several Defendants, including Defendant Millstone Unit Owners Association, Inc. (the "Association"), alleging that it is entitled various funds related to property known as the Millstone Condominium Development (the "Development"). Specifically, RBS claims that it is entitled to the proceeds from a flood insurance policy that the Association obtained through the National Flood Insurance Program and the proceeds from a proposed sale of the condominium property.

RBS filed a Motion for Partial Summary Judgment against the Association on November 14, 2008. (Doc. 37). The Association's opposition was due originally on December 14, 2008. On December 15, 2008, the Association filed a motion for an extension of time until December 26, 2008 to file its brief in opposition, and the Court granted the Association's request. On December 26, 2008 the Association filed a second motion for an extension of time until January 9, 2009 to file its opposition. The Court also granted that request. As of the date of this Memorandum and Order, however, the Association has not responded to RBS' motion. For the reasons set forth below, RBS'

Motion for Partial Summary Judgment is GRANTED.

## I. UNDISPUTED FACTS

This case arises out of the flooding and subsequent total destruction of a condominium development.  RBS is the successor by merger to CCO Mortgage Corporation ("CCO") and Charter One Bank.  (Doc. 38, Plaintiff's Exhibit ["PX"] A; PX A-1).  Susan Tackett is the owner of real property located at 16 Millstone Drive, Painesville, Ohio 44077, a part of the Millstone Condominium Development (the "Development").  (Doc. 38, PX B; PX B-3; PX B-4; doc. 11, at ¶ 3). Tackett's ownership interest in the Development includes not only her individual condominium unit but also a two and 12/19ths percent undivided interest in the common areas and facilities of the Development (collectively, the "Tackett Property").  (Doc. 11, at ¶ 3; doc. 38, PX B, at 7, 8, and 16 PX B-1, at Section VI.A.).  On December 20, 2005, CCO provided a mortgage loan to Tackett to help her purchase the Tackett Property (the "Tackett Mortgage") (Doc. 38; PX B, at 18-21; PX B-4).  CCO's mortgage interest was secured by the Tackett Property. (Id.).

The Declaration of Condominium Ownership for the Development expressly permits individual unit owners to encumber not only their individual units, but also the common areas and Facilities within the Development.  The provisions of the Declaration of Condominium Ownership that authorize such encumbering of the Common Areas and Common facilities reads:

> Each owner has the right to mortgage and/or encumber the Owners' each respective Unit together with the Owner's respective ownership interest in the Common Ares and Facilities . . . .
>
> *****
>
> A Unit Owner's undivided interest in the Common Areas and Facilities shall be deemed conveyed or encumbered with the Unit even though such interest is not expressly mentioned or described in the deed, mortgage or lease or instrument,

> conveyance or encumbrance.

(Doc. 38, PX B-1, at 12, 7).

The Declaration of Condominium Ownership also addresses the rights of mortgagees to be paid from any insurance or sale proceeds in the event of loss.

The relevant provisions read, in part:

> Upon such election, all of the Condominium Property shall be subject to any action for sale as upon partition at the suit of any Owner. In the event of any such sale or a sale of the Condominium Property after such election by agreement of all Owners, the net proceeds of the sale together with the net proceeds of insurance, if any, and any other indemnity arising because of such damage or destruction, shall be considered as one fund and shall be distributed to all Owners in proportion to their respective percentages of interest in the Common Areas and Facilities. **No Owner, however, shall receive any portion of the Owner's share of such proceeds until all lien and encumbrances on the Owner's Unit have been paid, released or discharged.**

(Id. at 22) (emphasis added).

On March 22, 2005, the Association obtained a flood insurance policy through FEMA's National Flood Insurance Program for the common areas and facilities of the Development (the "Association Policy"). (Doc. 38, PX B, at 25-26; PX C, at 27-29; PX C-24; PX C-25). CCO was a listed mortgagee on and third party beneficiary of the Association Policy. (Doc. 38, PX C, at 29; PX C-24).

The Association Policy contains a Mortgagee Clause, which states in relevant part:

> Any loss payable under Coverage A – Building Property will be paid to any mortgagee or whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss payee determined to exist at the time of loss, and you, as interests appear.
>
> *****

> All of the terms of this policy apply to the mortgagee.
>
> The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action of the building.

(Doc. 38, PX C-26, at 14-15).

In her deposition, Tackett acknowledged that CCO is entitled to any other proceeds related to the subject flood losses that she received from any third parties, including any proceeds she is entitled to receive under the Association Policy. (Doc. 38, PX B, at 61-62). The relevant portion of Tackett's deposition was as follows:

> Q. So at the time [that] you obtained your mortgage loan from Charter One Bank, it was your understanding and you agreed that any proceeds that would be payable otherwise to you under the association's flood insurance policies should be paid to Charter One Bank and applied to pay down your mortgage. Is that your understanding?
>
> A. That was how I perceived it.
>
> Q. That was what you agreed to?
>
> A. Yes.
>
> *****
>
> **Q. To the extent that you may have some right to receive proceeds from the Association Policy or from some third party related to the loss that are not otherwise covered by your insurance policy, are you in agreement that those proceeds should be paid over to Charter One until your note and mortgage are satisfied?**
>
> **A. I believe so, yes.**

(Id.) (emphasis added).

On July 26, 2006, the Development was damaged by a flood, which resulted in a total loss of the common areas and facilities of the Development and the Tackett Property. (Doc. 38, PX B,

at 8).  After evaluating the extent of the flood damage, the Association passed a resolution electing not to rebuild or restore any of the residential structures within the Development on the grounds that it was not economically feasible to do so.  (Doc. 38, PX B, at 66-67; PX B-40, at 1-2).

FEMA issued proceeds from the Association Policy in the amount of $59,352.63 directly to the Association after the flood loss.  (Doc. 38, PX B-18, PX C-36).  Those proceeds subsequently were deposited into the Court Registry pursuant to the Agreed Order.  (Doc. 34, 35).

RBS now requests that the Court enter summary judgment in its favor and declare RBS' right to receive proceeds from the Association Policy and the proposed sale of the condominium property.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the burden of showing the absence of any such genuine issues of material facts.  *Celotex*, 477 U.S. at 323.  A fact is "material" only if its resolution might affect the outcome of the lawsuit.  *Anderson*, 477 U.S. at 248.  All facts and inferences therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-moving party pursuant to Federal Rule of Civil Procedure 56(e), which states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise

> provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party.

(Emphasis added).

A fairly unusual situation presents itself where the nonmoving party does not respond to the motion for summary judgment. While the Court generally is free to sustain unopposed motions, this empowerment does not extend to summary judgment motions. *Rance v. Datavantage, Corp.*, 2008 WL 1899986, at *3 (N.D. Ohio April 28, 2008). The "district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged his initial burden." *Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991); *see also* *Sutton v. United States*, 1991 WL 590, at *2, n. 1 (6th Cir. 1991) ("Rule 56 requires a court, even where a motion for summary judgment is unopposed, to determine that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment.").

This does not mean, however, that "where the nonmoving party fails to respond to the motion for summary judgment, the trial court [must] search the entire record to establish that it is bereft of a genuine issue of material fact." *In re St. Clair Clinic, Inc.*, 1996 WL 6531, at *2 (6th Cir. 1996). Rather, the Court "should rely upon the facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

## III. LAW AND ARGUMENT

### 1. Contract Claim

RBS's first argument on motion for partial summary judgment is that it is contractually entitled to Tackett's interest in the proceeds of the Association Policy pursuant to the terms of both the Association Policy and the Tackett Mortgage. Specifically, RBS argues that it has contract rights in the proceeds because: "(1) the terms of the Association Policy expressly state that any proceeds are to be paid to CCO[;] and (2) Tackett assigned her interest in the proceeds to RBS and agreed to apply the proceeds to the unpaid balance of the Mortgage." (Doc. 37, at 8).

"'The purpose of contract construction is to effectuate the intent of the parties,' and that intent 'is presumed to reside in the language they chose to employ in the agreement.'" *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St.3d 559, 564, 820 N.E.2d 910 (Ohio 2004) (quoting *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (Ohio 1987). When the contract is clear and unambiguous, a trial court should enforce the contract as written. Ledyard v. Auto-Owners Mut. Ins. Co., 137 Ohio App.3d 501, 739 N.E.2d 1 (Ohio App. 2000). These rules apply to mortgage contracts. "Mortgages, being voluntary security agreements incident or collateral to a primary obligation, are susceptible to the same rules of interpretation and the same framework of analysis which apply to contracts generally." *First Fed. Sav. & Loan Assn. Of toledo v. Perry's Landing, Inc.*, 11 Ohio App.3d 135, 143, 463 N.E.2d 636 (Ohio App. 1983). They also apply to insurance contracts where the language is unambiguous. "When the 'terms of an insurance policy are clear and unambiguous,' Ohio law requires a court to 'appl[y] [the terms] to the facts without engaging in any construction.

As part of its claim to the proceeds of the Association Policy, RBS first points to the

language of the Association Policy itself.  The Association Policy states that "any [building property] loss payable . . . will be paid to any mortgagee of whom [the insurers] have actual notice at the time of loss." (Doc. 38, PX C-26, at 14-15).  "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court."  *Savedoff*, 524 F.3d at 763.  This language is not unclear or ambiguous: it sets forth clearly the right of any mortgagee of which the insurer had notice at the time of loss to the proceeds of the policy.

Second, RBS presents affirmative evidence that it — through its predecessor, CCO — was a mortgagee of which the insurer had notice at the time of loss.  As authorized by the Declaration of Condominium Ownership, Tackett conveyed an interest in the common areas an facilities of the Development to CCO as part of her Mortgage.  (Doc. 38, PX B, at 18-21; PX B-1, at 7, 12; PX B-4).  Furthermore, CCO was a listed mortgagee, an additional insured and third party beneficiary of the Association Policy.  The Declaration Pages of the Association Policy specifically list CCO as a first mortgagee.  (Doc. 38, PX C, at 29; PX C-24).  Dan Nicholson, the president of the Association, also confirmed in his deposition CCO's status as first mortgagee on the Association Policy.  The relevant portion of Nicholson's deposition was as follows:

> Q.     Exhibit 24, is that the declaration page for the policy that was in effect at the time of the loss?
>
> A.     I believe that is correct.
>
> *****
>
> Q.     Who is listed the first mortgagee at the time of the loss?
>
> A.     CCO Mortgage Corporation.

(Doc. 38, PX C, at 28-29).  It is undisputed that RBS is the successor by merger to CCO.  (Doc. 38, PX A; PX A-1).

As part of its claim as assignee to Tackett's interest in the proceeds, RBS again points to the language of the relevant contract — here, the Tackett Mortgage.  The Tackett Mortgage states in relevant part:

> "[a]ll Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender....
>
> **In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by the Security Instrument, whether or not then due**, with the excess, if any, paid to Borrower."

(Doc. 38, PX C, at 28-29). "Miscellaneous Proceeds" are defined in the Mortgage as "any compensation, settlement, award of damages or proceeds paid by a third party . . . for [] damages to, or destruction of, the [Tackett] Property . . . ." (Id. at 1-2).

This language too is clear and unambiguous.  Pursuant to this language, Tackett's lender is entitled to all Miscellaneous Proceeds that would otherwise be payable to Tackett in the event of a loss of the Tackett Property — including any share she might have in the proceeds of the Association Policy.  It is undisputed that the Development will not be restored or repaired.  The Association announced and passed a resolution so declaring on the grounds that it is economically infeasible to rebuild the condominium property.   (Doc. 38, PX B, at 66-67; PX B-40, at 1-2).  Furthermore, the Association does not dispute Tackett's assignment of her interest in the Miscellaneous Proceeds to her lender.

The Court finds, based on the above, that RBS has discharged its initial burden to show that: (1) there is no genuine issue of material fact that it is entitled to the Association Policy proceeds

based on the terms of the Association Policy and the Tackett Mortgage; and (2) therefore, RBS is entitled to those proceeds as a matter of law. The Association has failed to respond to RBS' motion for partial summary judgment, so the Court must rely on the facts as presented and designated by the moving party. *See Guarino,* 980 F.2d at 404. Under these circumstances, the Court finds that it is appropriate to enter judgment in favor of RBS on its contract claim.

**2. Statutory Claim**

RBS' second argument on motion for partial summary judgment is based on Ohio Revised Code § 5311.14. Specifically, RBS claims that the statute entitles it to any insurance proceeds or other indemnity related to the common areas and facilities of the Development and any portion of the proceeds from its sale to which Tackett would otherwise be entitled based on her undivided interest.

The relevant portions of O.R.C. § 5311.14 provide:

> (B)(1) Unless provided otherwise in the declaration, in the event of damage to or destruction of all or any part of the common elements of a condominium property, the unit owners, by the affirmative vote of those entitled to exercise not less than seventy-five per cent of the voting power or a greater per cent if provided in the declaration, may elect not to repair or restore the damaged or destroyed common elements.
>
> (2) Upon an election not to repair or restore, all of the condominium property is subject to an action for sale as upon partition at the suit of unit owners exercising a majority of the coting power of unit owners. If the condominium property is sold pursuant to division (B)(2) of this section, any net proceeds of the sale, the net proceeds of insurance, and any other indemnity arising because of the damage or destruction are considered as one fund for distribution to all unit owners in proportion to the undivided interests in the common elements appurtenant to their units.
>
> **No unit owner is entitled to receive any portion of those proceeds until all liens and encumbrances on the unit, except taxes and assessments of political subdivisions not then due and payable, are paid, released, or discharged.**

(Emphasis added).

It is undisputed that the common areas and facilities of the Development in this case incurred a total loss.  After the destruction of the Development, the Association passed a resolution electing not to repair or restore the property on the grounds that it was not economically feasible to do so. (Doc. 38, PX B, at 66-67; PX B-40, at 1-2).  The Association thereafter filed a partition action in the Geauga County Court of Common Pleas in order to effectuate the sale of the common areas and common property of the Development.  (Doc. 38, PX D).

Under O.R.C. § 5311.14, a unit owner is not entitled to receive any "net proceeds of the sale, the net proceeds of insurance, [or] any other indemnity arising because of the damage or destruction" of the common elements of a condominium development until all liens are satisfied.  The language of the statute is unambiguous, and it is undisputed that RBS currently holds a mortgage lien on Tackett's undivided interest in the common areas and facilities of the Development.  The Association does not dispute either the fact or the amount of RBS' mortgage lien on the Tackett Property. Therefore, the Court finds it appropriate to enter judgment in favor of RBS on its statutory claim. Specifically, the Court finds that RBS is entitled receive Tackett's portion of the net proceeds from sale of the common areas of the Development and any net proceeds from the Association Policy or other indemnity arising from the damage to the common areas to which Tackett would otherwise be entitled — until its lien has been fully discharged.

For the foregoing reasons, the Court finds that RBS has: (1) contractual rights to Tackett's interest in the proceeds of the Association Policy pursuant to the terms of both the Association Policy and the Tackett Mortgage; and (2) statutory rights under O.R.C. § 5311.14 to any sale or insurance proceeds to which Tackett would otherwise be entitled based on her undivided interest in the

common areas and facilities of the Development. Accordingly, RBS' motion for partial summary judgment against the Association is GRANTED.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: January 30, 2009.